Thank you, Your Honor. This case, good morning to you. I'm the appellate Anthony Thomas, improper. I want to make the court aware that I am very dyslexic, so sometimes I read some documents. Just bear with me for a minute. So this case, Your Honor, I think we're here today to right the wrongs that were perpetrated on me and my family by MILC, by the lower courts. Failure to abide by my constitutional rights for due process and following what's supposed to be the norm and impartial legal procedures. And so in acting, causing huge harm to my estate and my true creditors. The two main illegal actions taken by the lower court were stripping away of my attorney at a critical moment in this procedure without proper notice, coupled with the failure to afford us the time to prepare for this change by not allowing us to get a new attorney. The attorney moved to withdraw, correct? The attorney moved to withdraw, but his notice was not timely. The hearing was on the 22nd. The attorney filed his motion to withdraw on the 18th around five o'clock and the order was granted timely on the 19th by Judge Beasley. They all knew that I was working out of state. They had noticed that I was working in the state trying to restore power to the state because I worked for Nevada Energy. And they knew that I was working in an area where I had no internet or service. My attorneys were well aware of it and so was the court. So Mr. Thomas, Mr. Thomas, the record that I'm familiar with is that they filed the motion on about the 18th, but let's assume it's the 19th earlier. Well, it's the 18th at five o'clock, I believe. Sure, but the court required you to be at a hearing on the 22nd, which is when the court actually entered the order granting the relief to allow the counsel to withdraw. And you were present, the record reflects, at that hearing and you didn't object to the withdrawal of counsel because there was at that time an allegation that you had come at loggerheads and you were not getting along and they wanted out and you didn't object to them getting out. Is that not part of the record? Yes, your honor, that is part of the record. But if you look at the record, I wasn't even allowed to speak until page 18 of the transcript. You know, Judge Beasley railroaded me through this thing from the very beginning. I had no idea that my counsel was resigning. I found out the day that I got to court. That's not proper notice. And if they were to put it in the mail on the 18th, I wouldn't have received it because I was working out of town and they knew it. They knew I was coming in on Friday for the hearing. So what I'm trying to get at though is did you, are you saying that you did object, that you didn't want your counsel to withdraw, or that you didn't care at that point? No, no. Because that's what the record reflects, but that's not the true statement. What my attorneys put in writing in a declaration was completely false. They said that the reason that they were getting out of the case was because I was not communicating with them. They knew that the only time I could communicate with them was before six in the morning, before I started my shift where we had internet and at six at night and on Saturdays. And so I was communicating back and forth with them and the record will show that there was plenty of emails going back and forth with me and my attorneys. And the reason that me and my attorneys had some disputes is because their failure to do things properly. They drafted the contract where it expired before Judge Beasley signed it. And Judge Beasley also failed to do his job properly because- But let me just take you back a second again. What I'm interested in is at the hearing, where you're being told, you say that your first understanding your attorneys are withdrawing. My understanding is you didn't object. You did not say, no, I don't want these lawyers to be allowed to withdraw. In fact, just the opposite is true. You said fine, they can withdraw. I don't care. I did not say fine. I asked the judge specifically if I could get two weeks to get additional counseling. He said no. And I asked him on the record twice. And I think- I think Judge Gans is asking you to compartmentalize a little bit. So the first step in this is you didn't object to the withdrawal of counsel. Then, and sort of that is yes or no. And then the second part is having, if you consented to the withdrawal of this firm, then you asked for time to get someone else. So he's just trying to, he's trying to see if this is a two-step process, which it appears to be from the record. Yes, in your honor, I want to answer your question respectfully and right. You are right that I am not an attorney. I didn't know that I had the right to object or not. I've never represented myself in a court case. I've always had an attorney. And so I don't know the rules of the court. I have a disability. And so I didn't know that I was supposed to object at that time. You know, I did, was not given the opportunity to file a brief stating that, you know, the evidence why I didn't want my attorney to, to resign. And if you look at the document, the exhibit number two in my reply brief in the first motion, you will see the emails that were sent to the attorney and the, and my displeasure with my attorney was we had a sale agreement that was already done. My attorney's drafted your attorney with legal action in effect, which is a pretty good basis for the attorney saying we've got an irreconcilable conflict. I want out. Yeah, but they, they filed a motion to have $70 million put in their account without my knowledge. I'm not, I'm not suggesting that the, I think you're missing my point. But you have a $70 million dispute or a $200 million dispute with your attorney. I think, I think we need to move on. Cause I think you're missing the boat of say, if you think you could have said virtually anything, you didn't say anything. So, and if you think you could have said anything that would have compelled an attorney to continue to work for you with that kind of dispute going, I don't think you're going to convince us that, that it wasn't appropriate to say you guys need to part ways. There may be a question about your Yes, that's, that's correct. But I thought I could resolve those issues with my attorney. I thought that they were resolvable. I wasn't to the point where, you know I wanted my attorney to resolve them. I wanted him to file another motion with the court so the sale could go through. They drafted the sales agreement where it expired before the judge signed the order. And then the judge signed, sat on the order for a month. Mr. Thomas, you can use all your time on this issue. What I'm trying to say, I'm going to say it more directly as I don't think this is the, the, the thing that's going to win this appeal for you. And I think you're wasting your time. So I think we should move to your better arguments or other arguments. Thank you, your honor. I also felt that, you know, Nevada law says that an attorney cannot remove themselves from the case if it's at a critical juncture. And by him removing himself, my LLC was no longer represented, which owned the Emerald. And then when I asked Judge Beasley if I could get a two-week continuance, which I didn't think was extreme, to get counsel so that my LLC could be represented, I was denied that due process rights. So, Mr. Thomas, let me focus you just for a second on what we're really dealing with today. And that is we're dealing with you and your wife. That's what's in front of us today. Your motion for reconsideration to vacate the decision of Judge Beasley affects your case, your individual case, not the entity case. I appreciate that. I appreciate that. But what we're looking at is did his decision with regard to conversion of your case have on you, your discharge, your assets, membership interest in the LLC, not ownership of the Emerald, but just your ownership of the, you know, the membership interest. That's what was not whether the sales should have been conducted, not whether the trustees should have been appointed in the other case, not whether that case should have been converted. None of that's at issue in front of us. You are here on your own, only representing yourself and your wife in your case. How have you been damaged by virtue of that order, not affecting the LLC? You're Chapter 11. Yes. The conversion that they converted me, the reason that they gave is because I didn't have insurance on the Emerald. And that was not a reason to convert me to Chapter 7. The Emerald was in a secure vault and it didn't require insurance. You're giving me a reason why the conversion of the entity case was improper, because there was security that you didn't need insurance for. But that's not in front of us. The conversion, yes, but the conversion to Chapter 7 gave the other assets in my estate control to the trustee and the trustee sold my Beheya Emerald claim for $0. They sold my claim against my attorneys that took $150,000 out of my trust account, which I sued them because it wasn't authorized, which forced me into the bankruptcy in the first place, because there never was a loan to me. They forced me into bankruptcy because my attorneys were suspended in San Jose. And they colluded with Trissini's attorneys to tell me that I was not liable for the settlement. And so that's how they got me into bankruptcy. And if you look at the January 11th hearing, 2019, you will see all the wire transfers and the LLC agreements. I'll give you the exact docket number. And the wire transfers showing that I was forced into bankruptcy illegally. But be that as it may, you're in Chapter 11. And what the judge did was he converted you to Chapter 7 and put a trustee in. What I'm asking you is, you thought this is your position. You thought you had the ability, irrespective of what happened to the entity, to reorganize yourself under Chapter 11 and successfully do something that you didn't get accomplished through the liquidation of your estate, the entry of a discharge that was accomplished in the 7th. And that's how you've been damaged in this case. I just want you to try address that question if you can. The damages were that the trustee took over all my other assets and they liquidated those assets for nothing. The Bahia Emerald, if you look at the docket number, and I have that for you, they sold it for $0. And I spent $12,000 on my appeal briefs to take that case on. And I would have won that case because the other counsel never showed up. The other party never showed up. I would have won on a default. So when another party doesn't show up to a hearing, to a trial, you win on a default. So that Bahia Emerald case, they sold it for $0. The Emerald appraised for $400 million. That was in my estate. That was not part of the Chapter 11. Also, my attorneys took $150,000 out of my trust account that I was using to show that there never was a loan. Mr. Thomas, I'm just going to give you a warning that you're already well into your five minutes. You can continue to argue or you can stay the rest of your time. Okay. So for them to take my counsel away, they harmed me and all my other assets. I had a claim against Farmer's Insurance for $25 million. And the judge in that case was Defense Counsel for Farmer's Insurance. Let me just, in your Chapter 11 filing, in the schedules that you prepared and filed with the court, all of these other assets were listed and all of these other assets were disposed of by the Chapter 7 trustee for nothing is what your position is. They sold them in the court under the Chapter 7. And it's on the docket. I have the actual transcripts of the docket numbers. And let's, can I, if you give me one moment to get that. I don't want you to waste, I don't want you to waste your time giving the numbers we can find. We can go find that. We have the docket. Okay. So the Bahia Emerald case was, I think, on one, the transcript was on 1-17-16, I believe. And I actually have the docket numbers I wrote down, but I just got a little bit frustrated with this hearing. I have them all for you. So if you read that case, they sold the Bahia Emerald for $0. And I was the highest bidder. And Judge Beasley went through with the sale anyways. He says, you've owned this Emerald long enough. You know, and that damaged me. They sold my, you know, they wouldn't let me go forward with my farmer's case. And one of the problems I had with my attorney is he told, I gave him all this information in the very beginning, and he was supposed to amend the complaint. He never did. All right, Mr. Thomas, you've used all your time. So you have no rebuttal time. So thank you. Mr. Hartman. All right. Thank you, your honors. On behalf of the trustee who was appointed after the August 22nd, 2014 hearing, Jerry Kopernutzen, a couple of things. I understand Mr. Thomas's frustration, but the Bahia issue and the insurance claim issue and the malpractice issue or the $150,000 issue, none of that's part of the appellate record. That's stuff that happened in the bankruptcy case. But let me ask you, because the question is, did the judge approve those transactions? My recollection is that there were noticed hearings and the court approved those transactions. Was there an appeal from that? No. So those are final orders that bind? That's correct. That's correct. So again, and I think it's as Mr. Thomas noted in his brief, we're really talking about the period of time between the petition, which was, I think, in April of 2014 and August 22nd, because it's based upon those events leading up to Judge Beasley's decision that led ultimately to Mr. Thomas's Rule 60B motion to have that conversion order set aside. And I don't know that I need all of my time because I think the focus really is on the reasons that were in front of Judge Beasley near the end of the hearing on August 22nd included the insurance issue, which was originally raised by the United States trustee. But then, and it may seem trivial, but the failure to deliver the alternative key to the Sarasota vault so that a creditor with a very large claim could utilize the discovery tools in the bankruptcy court to inspect the Thomas Emerald, which was located in the vault and determine exactly what it was and what it might be for purposes of liquidation. Mr. Hartman, let me just interrupt for one second. Let me just, I get the whole situation that was going on with the entity and the inability of the court, the United States trustee creditors to feel like they were getting the information they needed with regard to the Emerald, its security, insurance, that situation. There was a pending motion to appoint a chapter 11 trustee. There was then an oral motion made by the U.S. trustee joined in by Beach at that hearing to instead not appoint a chapter 11 trustee, but convert the case to chapter seven. I didn't see anything in the record that gave any notice to Mr. Thomas that there was some pending potential appointment in his case individually, or that there was a trustee being considered under chapter seven before the judge made his decision. I believe you're correct, your honor. Of course, I wasn't involved yet, but that's what the record reflects. Okay. Do you think that under those circumstances then that there was at least a question or their theory that, you know, there wasn't due process notice and opportunity to defend against the decision the judge was about to make was present here in this case? Well, that is correct, but I believe the court and its experience, and I put this in my brief, really had good reason to do what he did because, you know, the lack of insurance by itself, probably not an issue. Even the lack of delivering the key to something that's secure in a vault may not be the issue, but you have the situation where there's no disclosure of the purchase price, no disclosure of the identity of the true purchaser, no due diligence by Mr. Thomas to find out whether or not this was a real legitimate buyer with $200 million to close a transaction. The judge basically said, Mr. Thomas, I think you're being scammed. Oh, I gotcha. I follow a hundred percent, but that affects the decision with regard to what you're going to do with the emerald, who's going to individual chapter 11, he and his wife are involved in, that that case should be converted based upon those particular facts or those particular issues. How do those two fall together? I think from a bankruptcy, you know, practitioner's perspective, the general reason why we're all in this business is because the court is trying to protect the rights of creditors. And the beach papers that were filed basically said, we don't, based upon everything that has happened to date, we don't have any confidence that Mr. Thomas is acting in the best interest of us as the creditors because of the obfuscation of the information related to this purchase agreement. And merely the statement, he said, well, I can't disclose any of this because my family would be in danger. But don't you stop all of that when you appointed chapter 11 trustee or chapter seven trustee in the entity case, because then that entity, that particular trustee then has control and decision-making authority. It doesn't matter what Mr. Thomas and his wife want to do because you've taken it away from them. You don't need to convert their case in order to protect the estate, the A and T emeralds, the state's creditors and the validity or the ability to sell and dispose of the emeralds, right? I cannot disagree with you, your honor. Mr. Hartman, can I ask you sort of a similar question? Sure. We're looking backwards at something that happened a pretty long time ago. Right. And we're questioning notice in regards to the conversion of the individual case. The corporate case is not or the entity case is not in front of us. But in the meantime, we have a final order that, you know, it's been there all along. The trustee has properly acted in connection with that order. There have been multiple actions that have been taken, all of which are subject to final order. What's left to be done? I mean, even if we were to determine that there was a problem, what would be the consequences of that decision? Can we grant any effective relief? Well, I think I understand the question and I believe if Judge Beasley's order was overturned, then Thomas would go back into veteran possession in a Chapter 11 context. And although I can't speak for creditors, based upon my knowledge of the history of the case, there would be an immediate motion to convert the case back to Chapter 7. Mr. Thomas has gotten his general discharge, but there is a non-dischargeability judgment against him. I don't know what the status of that is right now. Can you can you opine, and this I think where Judge Taylor was headed, can you opine as to the effect of the conversion order on the other orders that were entered by the bankruptcy court while the Chapter 7 for the last five years or six years has proceeded? In other words, does that undo, does the voiding of that order void every other order? Does it mean that people who purchased in good faith, pursuant to notice and opportunity and no objections, now have to give all the property back? That's where I think you're headed. Well, obviously that's the unintended consequences of this kind of fact pattern, but frankly I've never had that question come up. I know that it's either Section 349 or 50, I can't remember which, that talks about whether or not orders remain in effect after certain events have happened and the court can fashion an order to allow things to remain in effect and not sort of undone, if you will, but I cannot honestly answer based upon my experience. If you can unring that bell. It's an opposer and that's my concern is mootness. I mean just to put a word on it, is what effective relief can we grant at this point given everything that's happened? Well, there's one more element to that answer and I think is that this is not part of this record, but I can tell you that the emerald in question was sold after notice in a hearing in front of Judge Sprager. In the entity case? Well, yes, in the entity case, but there are no other assets in the Thomas case because as I put in the schedules and statements, they had a little bit of cash and then the equity membership interest in the LLC was the only to reorganize. The cause of action that he's talking about, and I will go back and look at the schedules, but the cause of action against his attorneys, that was in the corporate case too? I'm sorry, I don't remember. I could find it, but I don't want to take the court's time to do that. I mean, I don't know how we unwind the discharge, whether that's impossible, whether you can go back into a chapter 11 now, having him already received a discharge, which he wouldn't be entitled to it without a plan in a chapter 11. If I asked you to point out what prejudice did he suffer or not suffer, what would your answer be to that question? I'm just trying to discern it. I know he thinks there's a million wrongs, I'm not discounting that, but I just want to hear your side of the prejudice response. Your question to me is what prejudice did Mr. Thomas suffer as a result of the conversion? Correct. From 11 to 7. In your view, in his case, what happened in his case that was prejudicial to him? If anything, maybe you say nothing. I don't know what the answer is. That's why I'm answering the question, which is unusual. But I would say that the prejudice is minimal because he got the discharge that he was entitled to under 727. He is stuck with the 523 non-dischargeable judgment. There's no assets left with respect to the other creditors whose claims didn't get addressed in this case. That's, for instance, the Beach Trust. He got the discharge with respect to those obligations, but there's nothing to reorganize to create value to give to creditors, which is the whole point of the chapter 11. How about income? Do you have any appeal for the income and expenses and net income that might have been used to fund a plan under chapter 11, if there was any? I can only say that relative to the magnitude of the claims in the several millions of dollars, both as to the creditor holding the non-dischargeable judgment and the Beach Trust, I can't recall what Mr. Thomas's income was. I don't know if Mrs. Thomas works, but it would have not been material with respect to payment of, let's say, 20 cents on the dollar in my estimation. But in the sense of prejudice, he was allowed to keep income. He arguably wouldn't have been allowed to keep in a chapter 11. I'm sorry, I didn't hear the question. He was allowed to keep his income as a result of the conversion. He wasn't required to submit it to the payment of his debts. That's correct because, you know, I can't remember which amendment to the code took place and changed the ruling on that, but your post-petition income is subject to consideration in your chapter 11 plan confirmation process. Is there anything else you wanted to add before we end it? Well, the only thing I would add, Your Honor, is that, and I cited the case law on the judge's ability to sua sponte convert a case if presented with the facts which he or she believes support the conversion. All right. Any questions, Judge Brand? No, thank you. Any questions, Judge Gahan? No, I really appreciate it. Thanks. All right. Thank you. This matter will be deemed submitted. Thank you for your arguments. Your Honor, can I ask one question? I have the docket numbers. One docket is 340 for the McGrane case that they spoke and the other docket number for the behemoth is 332. And I wanted one other thing, Your Honor, please. There was no hearing scheduled on the docket for the conversion from Chapter 7, which takes away my constitutional rights. It wasn't scheduled until 20 days later and I didn't get to put in a reply brief. That takes away my due process constitutional rights. Mr. Thomas, you've used up all your time and we are well aware of the record here. Okay. Thank you. Thank you. Thank you. Thank you both. It will be submitted and we will be in recess. I think we have concluded everything, have we not, Madam Courtroom Deputy? This session of the Bankruptcy Appellate Panel hearing on September 16th is now adjourned. All right. The panel will re-meet in, I think, 10 minutes.
judges: Taylor, Brand, Gan